[No. A066894. First Dist., Div. One. Nov. 14, 1995.]

In re ROBERT B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROBERT B., Defendant and Appellant.

**COUNSEL**

James L. Lozenski for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—This appeal involves apparent conflicts between the provisions of Penal Code section 4011.6 and Welfare and Institutions Code sections 6550 and 6551, each authorizing the treatment of a minor offender referred to and detained in an appropriate state mental health facility (facility) pursuant to the Lanterman-Petris-Short (LPS) Act, Welfare and Institutions Code section 5000 et seq. As relevant, the Penal Code permits the juvenile court in most cases to retain concurrent jurisdiction over such a minor, and further provides that the minor is entitled to credit for time spent in a facility against any period of commitment ordered by the juvenile court. Welfare and Institutions Code section 6551, however, provides that the juvenile court's jurisdiction is suspended and does not provide for any credits for time spent in a facility. We conclude that the Penal Code and Welfare and Institutions Code should be construed together, and together provide that the juvenile court in most instances retains concurrent jurisdiction over the minor and that the minor in most instances is entitled to credits for time spent in a facility.

### Background

In May 1991, appellant Robert B. was made a ward of the juvenile court after the court sustained against him a Welfare and Institutions Code section 602 petition alleging petty theft. Appellant continued in his antisocial conduct, with the result that a number of supplemental petitions were filed against him. The proceedings at issue here arise from the third and fourth supplemental petitions, filed in late 1991 and early 1992. These petitions alleged, respectively, that appellant had committed an assault with a deadly weapon other than a firearm, and that he had possessed rock cocaine for sale; conducted gaming; and engaged in disruptive behavior at a school where his presence was not authorized. Before the hearings on these matters could be completed, the Contra Costa County Children's Services petitioned the superior court under Welfare and Institutions Code section 5350 of the LPS Act for the appointment of a conservator for appellant for the purpose of committing him to Napa State Hospital. In April 1993, the superior court granted the petition, finding that appellant was "gravely disabled." The court accordingly appointed a temporary conservator. Appellant thereafter was

committed to Napa State Hospital where he remained for approximately 15 months. In the meantime, the juvenile court suspended any further proceedings on the third and fourth supplemental petitions, finding that it lacked jurisdiction over the action during the pendency of the conservatorship.

The juvenile court proceedings were put back on calendar in June 1994, apparently because the staff at Napa State Hospital had determined that appellant was unwilling or unable to continue with the facility's program. After further hearings on the third and fourth supplemental petitions, the juvenile court, in July 1994, sustained the allegations of assault and gaming. The other allegations were dismissed. Appellant's conservator thereafter formally petitioned for termination of the conservatorship, and the superior court, over appellant's objection, ultimately did in fact terminate the conservatorship. In the meantime the juvenile court committed appellant to the California Youth Authority for a maximum term of 52 months, awarding him credit for time spent in the juvenile hall, but finding that no credits should be awarded for the time appellant spent in Napa State Hospital.

Appellant contends (1) that he was entitled to credits for the time he spent at Napa State Hospital, and (2) that the suspension of the juvenile court proceedings against him during that time deprived him of his right to a speedy trial. In a related petition for habeas corpus, appellant argues that his juvenile court attorneys failed to afford him the effective assistance of counsel when they did not raise issues of a lack of speedy trial and double jeopardy in the juvenile court. We find that appellant is entitled to the credits he claims, but that his speedy trial rights were not abridged. We therefore will affirm the order of commitment, but remand the matter to the juvenile court to calculate the credits due appellant.[1]

*Discussion*

I.

*Penal Code Section 4011.6; Welfare and Institutions Code Sections 6550 and 6551; and the LPS Act*

California's statutory scheme appears to set forth two slightly contradictory procedures for the involuntary commitment of juveniles to a facility, both of which involve LPS proceedings. Welfare and Institutions Code section 705 provides, "Whenever the court, before or during the hearing on the petition, is of the opinion that the minor is mentally disordered or if the

---

[1]For the same reasons appellant's petition for a writ of habeas corpus has been denied by order filed this day.

court is in doubt concerning the mental health of any such person, the court may proceed as provided in Section 6550 of this code or Section 4011.6 of the Penal Code." Welfare and Institutions Code sections 6550 and 6551 authorize the juvenile court to refer minors to an appropriate facility for a 72-hour evaluation. If the professional person in charge of the facility finds that the minor needs intensive treatment as the result of a mental disorder, the minor may be certified for not more than 14 days of involuntary intensive treatment. In addition, the minor may be detained for longer periods as authorized by the act. It has been recognized judicially that section 6551 applies to the detention of minors such as appellant, for whom a conservator has been appointed. (*In re Michael E.* (1975) 15 Cal.3d 183, 193, fn. 14 [123 Cal.Rptr. 103, 538 P.2d 231]; *In re L.L.* (1974) 39 Cal.App.3d 205, 212-213 [114 Cal.Rptr. 11].) Section 6551 further provides: "The jurisdiction of the juvenile court over the minor shall be suspended during such time as the minor is subject to the jurisdiction of the court in which the petition for postcertification treatment of an imminently dangerous person or the petition for commitment of a mentally retarded person is filed or under remand for 90 days for intensive treatment or commitment ordered by such court." Section 6551 does not address the question of whether, after treatment has been terminated and the minor returned to the juvenile court, the juvenile court should award credit for time spent in the state facility against any period of commitment.

Penal Code section 4011.6 also authorizes the juvenile court to refer persons in custody in a juvenile detention facility, to a state facility for 72-hour treatment and evaluation pursuant to the LPS Act. Section 4011.6 further provides: "If the prisoner is detained in, or remanded to, a facility pursuant to those articles of the Welfare and Institutions Code, the time passed in the facility shall count as part of the prisoner's sentence. . . . [¶] [A] minor alleged to be within the jurisdiction of the juvenile court, may be concurrently subject to the Lanterman-Petris-Short Act. . . . [¶] If a prisoner is detained in a facility pursuant to those articles of the Welfare and Institutions Code and if the person in charge of the facility determines that arraignment or trial would be detrimental to the well-being of the prisoner, the time spent in the facility shall not be computed in any statutory time requirements for arraignment or trial in any pending criminal or juvenile proceedings. Otherwise, this section shall not affect any statutory time requirements for arraignment or trial in any pending criminal or juvenile proceedings."

In short, under Welfare and Institutions Code section 6551, wards of the juvenile court may be detained involuntarily in a facility as permitted under the LPS Act, the jurisdiction of the juvenile court will be suspended during

the time that the minor is subject to the jurisdiction of the court overseeing that detention, and the minor is not entitled to credit for time spent in the facility against any commitment order of the juvenile court. Under Penal Code section 4011.6, a minor who is in custody in a juvenile detention facility also may be detained involuntarily in a facility as permitted by the act, but unless the person in charge of the facility determines that the juvenile court proceedings would be detrimental to the minor, the juvenile court retains concurrent jurisdiction over the minor and the time passed in the facility shall be credited against any period of commitment in the juvenile court proceedings. As appellant points out, the disparity between these provisions raises an issue of equal protection that is exacerbated by the fact that adults are entitled to credit against a prison sentence for time spent in a state mental health facility following an LPS commitment. (Pen. Code, § 2900.5; *People* v. *Smith* (1981) 120 Cal.App.3d 817, 822 [175 Cal.Rptr. 54]; *In re Dalton* (1981) 117 Cal.App.3d 521, 525 [172 Cal.Rptr. 783].)[2]

■ The Attorney General suggests that these potential problems be resolved by the simple and well-respected expedient of construing statutes to avoid any doubts as to their constitutionality (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 581 [7 Cal.Rptr.2d 245, 828 P.2d 147]; *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 271 [284 Cal.Rptr. 718, 814 P.2d 704]), and so as to harmonize them with one another and with the statutory scheme as a whole. (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].) The suggestion has merit and we adopt it, concluding that Welfare and Institutions Code section 6551 and Penal Code section 4011.6

---

[2]It was suggested in the juvenile court that Welfare and Institutions Code section 6551 applied to wards of the court, while Penal Code section 4011.6 applies to mere "detainees"; i.e., juveniles who have not yet been declared wards of the court. Both appellant and respondent urge us to find no such distinction between the provisions, and, indeed, we can find none. Nothing in section 4011.6 indicates that its provisions are intended to apply only to juveniles who have not yet been declared wards of the juvenile court. Rather, by its terms it applies generally to persons in custody in a juvenile detention facility. The section defines "juvenile detention facility" as including "any state, county, or private home or institution in which *wards* [our emphasis] or dependent children of the juvenile court or persons awaiting a hearing before a juvenile court are detained," implying that its provisions apply to all such persons. In addition, section 4011.6 sets forth the procedure to be followed if the prisoner is to be released from the facility prior to the expiration date of the prisoner's sentence (or, in a juvenile case, period of commitment). By its terms, then, section 4011.6 governs juveniles who are subject to dispositional orders and who, therefore, have been found to be wards of the juvenile court. We also reject any implication that by providing that "time passed in the facility shall count as part of the *prisoner's sentence* [our emphasis]" the Legislature intended section 4011.6 to apply only to juveniles who have been *sentenced*; i.e., sentenced as an adult rather than committed as a juvenile. If the Legislature had so intended, it could have stated so clearly. In any event, the next sentence of the section discusses the situation where the prisoner is remanded to a juvenile detention facility. For the most part such "prisoners" will not have not been sentenced as adults.

should be considered complementary, rather than as providing alternative procedures. Together, the sections authorize the juvenile court to refer persons within its jurisdiction for 72-hour evaluation or treatment after which, in appropriate cases, the provisions of the LPS Act may be invoked, pursuant to which the minor may be detained in a mental health facility for a longer period of time. The juvenile court retains concurrent jurisdiction over the minor during the LPS proceedings, unless the person in charge of the facility determines that arraignment or trial would be detrimental to the well-being of the minor. In such a case the juvenile court's jurisdiction is suspended during such time as the minor is subject to the jurisdiction of the court overseeing the LPS proceedings. When the juvenile court's jurisdiction is suspended, the time spent in the mental health facility *shall not* be computed in any statutory time requirements for the pending juvenile proceedings, and time spent in the facility *shall not* be credited towards any period of commitment ordered by the juvenile court. If, however, the juvenile court is entitled to concurrent jurisdiction, the time spent in the facility *shall* be computed in any relevant statutory time requirements and any time spent in the facility *shall* be credited against any period of commitment ordered by the juvenile court.

## II.

### *Appellant's Claims of Error in Denying Credits, Denial of the Right to a Fair Trial, Double Jeopardy, and the Ineffective Assistance of Counsel*

In the present case there is no evidence that the person in charge of Napa State Hospital determined that further proceedings in the juvenile court would be detrimental to appellant's well-being. It follows, first, that appellant must receive credit for the time spent in the hospital against the period of his commitment to the California Youth Authority; second, that the juvenile court was entitled to reconvene the hearings on the third and fourth supplemental petitions before the conservatorship was terminated; and third, that in arguing that he was deprived of his right to a speedy trial, appellant is entitled to count the approximately 15 months during which the juvenile court suspended the hearings on the third and fourth supplemental petitions.[3]

The Attorney General asserts that this court should not consider appellant's speedy trial argument because appellant failed to object to the

---

[3]Appellant's additional, double jeopardy, claim fails because he was not subjected to more than one prosecution on the third and fourth supplemental petitions; rather, the prosecution of those offenses simply was suspended for a period of time. "The federal and state double jeopardy clauses prohibit only multiple prosecutions 'for the same offense.'" (*People* v. *McLain* (1988) 46 Cal.3d 97, 120 [249 Cal.Rptr. 630, 757 P.2d 569]; and see *In re Anthony H.* (1982) 138 Cal.App.3d 159, 165-166 [187 Cal.Rptr. 820].)

suspension of the juvenile court proceedings below, and because upon resumption of the juvenile court proceedings appellant did not move to dismiss the third and fourth supplemental petitions on speedy trial grounds. (See *People* v. *Wright* (1990) 52 Cal.3d 367, 389 [276 Cal.Rptr. 731, 802 P.2d 221] and *People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452].) Appellant chose, rather, to argue that the juvenile court lacked jurisdiction to reconvene because the conservatorship had not yet been terminated. As we conclude that appellant cannot prevail on his speedy trial argument in any event, and as he has raised the same argument as a basis for claiming the ineffective assistance of counsel, we will consider his argument here in the interest of the efficient administration of justice.

 "To determine whether a minor's right to a speedy adjudication has been abridged, the court balances a number of factors. 'These include, on the one hand, the loss to the People if they cannot bring the charges, which is generally a function of the seriousness of the charge; and on the other hand, the length of the delay, the reasons for it, the defendant's assertion of his right, and the specific prejudice to the defendant.' [Citation.]" (*People* v. *Superior Court* (*Jorge C.*) (1990) 224 Cal.App.3d 1114, 1117 [274 Cal.Rptr. 439].) Here, although the delay in the juvenile court proceedings was relatively lengthy, there could have been little or no prejudice to appellant. Indeed, he complains only that because of the suspension of the juvenile court proceedings he has had to face a longer sentence than he would have faced had there been no delay. By holding that appellant is entitled to credit for the time he spent in Napa State Hospital, we have removed that prejudice. We have reviewed the hearings on the allegations of the supplemental petitions and can find no reason to believe appellant's ability to contest them was impaired by the delay. In addition, the allegations against appellant, particularly that of assault with a deadly weapon, are serious. Although we have found that the juvenile court had concurrent jurisdiction, permitting the juvenile action to go forward, the court's belief that it lacked jurisdiction was not at all unreasonable, and the matter certainly could not be heard without the juvenile court's acquiescence. Finally, the delay, although unnecessary, was intended as a benefit to appellant, so that he might be provided with the treatment that he was found to need. In short, even if prejudice might be presumed to have resulted from the length of the delay, a balance of the relevant factors compels to the conclusion that appellant's speedy trial rights were not abridged.

As the record does not reflect the exact amount of time appellant spent in Napa State Hospital, the case is remanded to the juvenile court to calculate the credits due appellant for time spent in that facility, and to award

appellant those credits against the order of commitment. The order of commitment otherwise is affirmed.

Strankman, P. J., and Dossee, J., concurred.